UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

TOBY OLSEN, individually and on behalf of
all others similarly situated,

                Plaintiff,

      -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                Defendants.
_____

MORDEKAI SHAPIRO, individually and on
behalf of all others similarly situated,

                Plaintiff,

      -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                Defendants.
_____

ZACHARY ALAN STARR, on behalf of himself
and all others similarly situated,

                Plaintiff,

      -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                Defendants.
_____

**MEMORANDUM OF DECISION
AND ORDER**

04-CV-4165 (DRH)(JO)

04-CV-4282 (DRH)(JO)

04-CV-4375 (DRH)(JO)

---

JOSEPH R. RUSSO, individually and on
behalf of all others similarly situated,

        Plaintiff,

    -against-                                      04-CV-4464 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

        Defendants.

---

ELI BOTKNECHT, individually and on
behalf of all others similarly situated,

        Plaintiff,

    -against-                                      04-CV-4490 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN

        Defendants.

---

RAMIN SARRAF, individually and on
behalf of all others similarly situated,

        Plaintiff,

    -against-                                      04-CV-4577 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN,

        Defendants.

---

_____
HARLIN BROWN, on behalf of himself
and all others similarly situated,

      Plaintiff,

  -against-         04-CV-4845 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

      Defendants.
_____
PETER BRANDEL, individually and on
behalf of all others similarly situated,

      Plaintiff,

  -against-         04-CV-5047 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN,

      Defendants.
_____
ROBERT LOWINGER, on behalf of himself and
all others similarly situated,

      Plaintiff,

  -against-         04-CV-5065 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, ROBERT WANN,
MICHAEL F. MANZULLI, DONALD M. BLAKE,
ANTHONY E. BURKE, DOMINICK CIAMPA,
ROBERT S. FARRELL, WILLIAM C.
FREDERICK, MAX L. KUPFERBERG,
HOWARD C. MILLER, JAMES J. DONOVAN,
and JOHN A. PILESKI,

      Defendants.
_____

RICHARD A. STRAUSS, individually and on
behalf of all others similarly situated,

        Plaintiff,

   -against-                                     04-CV-5101 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P. PUORRO,

        Defendants.

AL TAWIL and ESTATE OF FARAH MAHLAB,

        Plaintiffs,

   -against-                                     04-CV-5128 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, ROBERT WANN,
MICHAEL F. MANZULLI, DONALD M. BLAKE,
ANTHONY E. BURKE, DOMINICK CIAMPA,
ROBERT S. FARRELL, WILLIAM C.
FREDERICK, MAX L. KUPFERBERG,
HOWARD C. MILLER, JAMES J. DONOVAN,
and JOHN A. PILESKI,

        Defendants.

**HURLEY, District Judge:**

        Presently before the Court are the motions by: (1) Metzler Investment GmbH, for account of its funds MI-Fonds 208 and MI-Fonds 705 ("Metzler Investment") and Bernard Drucker (collectively, the "NYCB Group"); (2) Carlos J. Burbano, Anna C. Burbano, Henry E. Dubuy, Anthony J. Izzo, Hans Kalb, Dong K. Lee, Joseph Tobin, and Anthony Whitehead (collectively, the "Lee Group"); (3) Dr. Max Schnapp ("Dr. Schnapp"); (4) James T. Stevens and

John W. Feil (collectively, the "Stevens Group"); (5) Vera Dalia, PhD, Anthony Curcio, and Genevieve DeCarlo (collectively, the "Dalia Group"); and (6) Philip A. Stewart, Joyce Stewart, and International Brotherhood of Electrical Workers Local 98 (the "Stewart Group") for an Order consolidating the above-referenced actions,[1] appointing lead plaintiff, and approving the selection of lead counsel. For the reasons stated below, the motion of the NYCB Group is granted in its entirety and the remaining motions are granted in part and denied in part.

## **BACKGROUND**

The above-captioned actions were commenced as purported securities class actions on behalf of investors who purchased or acquired stock of New York Community Bancorp, Inc. ("NYCB") between June 27, 2003 and May 9, 2004 (the "Class Period"). The actions seek to recover damages suffered by members of the class as a result of Defendants' alleged violations of federal securities law. (Compl. ¶ 1.)[2] Specifically, the Complaint alleges that on the first day of the class period, NYCB announced that it had signed a definitive agreement with Roslyn Bancorp, Inc. ("Roslyn"), valued at $1.579 billion, whereby Roslyn would merge into NYCB and Roslyn shareholders would receive 0.75 shares of NYCB stock in exchange for each share of Roslyn stock. (*Id.* ¶ 24.) The Complaint further alleges that in connection with the merger, Defendants failed to disclose and misrepresented material adverse

---

[1] At the time of the filing of the parties' motions, there were eight related cases pending before the Court. Since that time, three additional related cases have been filed, to wit, *Lowinger v. New York Community Bancorp, Inc.*, 04 CV 5065, *Strauss v. New York Community Bancorp, Inc.*, 04 CV 5101, and *Tawil v. New York Community Bancorp, Inc.*, 04 CV 5128. These three related cases will be considered in the Court's decision.

[2] All citations to Complaint refer to the Complaint filed in *Olsen v. New York Community Bancorp, Inc.*, 04 CV 4165, the first action filed in this Court.

facts, which were known to Defendants or recklessly disregarded by them, which caused NYCB's stock to be artificially inflated. (*See id.* ¶¶ 25-57.)

The first action, *Olsen v. New York Community Bancorp, Inc.*, 04 CV 4165, was filed on September 24, 2004. That same day, plaintiffs' counsel published notice of the pendency of the action over the *PR News Wire*. The notice advised members of the proposed class of their right to move before this Court to serve as lead plaintiff(s) on or before November 23, 2004. (*See, e.g.*, Decl. of Aaron Brody, dated Nov. 23, 2004, Ex. A.)

Presently pending in the Eastern District of New York are eleven separate related securities fraud class actions. Plaintiffs in six of these actions have filed motions to consolidate and for appointment as lead plaintiff. Defendants take no position with regard to the respective motions.

## DISCUSSION

### I. *The Motions to Consolidate are Granted*

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court must decide any motion to consolidate prior to deciding a motion for appointment of lead plaintiff in a proposed securities class action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Rule 42 of the Federal Rules of Civil Procedure provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; [and] it may order all the actions consolidated." Fed. R. Civ. P. 42(a).

Here, the factual allegations in each of the above-referenced actions are virtually identical and, as a result, the same discovery will be relevant to all of the actions. Several of the

actions, however, have alleged slightly different class periods and name different individual defendants.  Moreover, some of the actions assert claims by former Roslyn shareholders pursuant to the Securities Act of 1933 (the "Securities Act"), some assert claims by persons who purchased NYCB stock on the open market pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), and some assert claims pursuant to both statutes.  None of these minor differences, however, which can be resolved when the appointed lead plaintiff files a consolidated complaint, detracts from the overwhelming factual and legal similarities among the cases.  *See, e.g.*, *Dolan v. Axis Capital Holdings Ltd.*, Nos. 04 Civ. 8564, 04 Civ. 8810, 2005 WL 883008, at * 2 (S.D.N.Y. Apr. 13, 2005) (consolidating cases where one case asserted claims against additional defendant and claims "overlapp[ed]"); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292-93 (E.D.N.Y. 1998) (consolidating cases alleging different class periods and slightly different facts; "the facts and legal issues need not be identical to warrant consolidation"), *opinion adhered to on reconsideration*, 181 F.R.D. 218 (E.D.N.Y. 1998). Moreover, it is apparent that no party will suffer prejudice from consolidation, a fact confirmed by the complete absence of any opposition thereto.  Finally, it is equally apparent that consolidation would significantly enhance judicial economy.  There is, in short, nothing to be gained by requiring this matter to proceed as eleven separate cases.  Accordingly, the actions involve "common issues of law and fact" and are hereby consolidated pursuant to Rule 42(a).

## II. *Motions for Appointment of Lead Plaintiff*

### A. *Procedure under the PSLRA*

The PSLRA sets forth the procedure governing the appointment of a lead plaintiff in securities class actions.  As an initial matter, the plaintiff who files the first action must

publish notice to the class within twenty (20) days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). Here, notice of the first action was published on September 24, 2004.

Next, the PSLRA provides that within ninety (90) days after publication of notice, the Court shall consider any motion made by a purported class member and shall appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B). There is a rebuttable presumption that the "most adequate plaintiff" is

> the person or group of persons that –
>
> > (aa) has either filed the complaint or made a motion in response to [the statutorily mandated] notice . . .;
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

### B. *Application to the Present Cases*

Plaintiffs in six of the above-referenced cases filed competing motions for appointment as lead plaintiff. Upon review of the competing motions, the Stevens Group subsequently withdrew its application. The Dalia and Stewart Groups failed to file any opposition papers in response to the other applicants' motions and, thus, have presumably

8

withdrawn their applications as well.[3] Thus, the only three groups under consideration are the NYCB Group, the Lee Group, and Dr. Schnapp.

All three groups have satisfied the first criterion necessary for a finding that it is the most adequate plaintiff in that each has timely filed a motion in response to the notice of the first filed action. *Id.* § 78u-4(a)(3)(B)(iii)(I)(aa). The Court must then determine which group holds the largest financial interest in the relief sought. *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb).

All three groups have submitted affidavits along with their papers in support of their respective claims of financial losses. The NYCB Group purchased or otherwise acquired 106,000 shares of NYCB stock, incurring an estimated loss of $905,647.65. (*See* Decl. of Peter E. Seidman, dated Nov. 23, 2004, Exs. C and D.) The Lee Group purchased 57,116 shares of NYCB stock during the class period and suffered estimated losses of $451,547. (*See* Decl. of Aaron L. Brody, dated Nov. 23, 2004, Exs. B and C.) Finally, Dr. Schnapp acquired 59,432 shares of NYCB through the merger of NYCB and Roslyn and 780 shares through dividend reinvestment for a total estimated loss of $605,520.[4] (*See* Decl. of William Berbarduci, dated Nov. 23, 2004, Ex. B; Dr. Schnapp Reply Mem. at 2 n.3.) Thus, at first glance, the NYCB Group appears to have sustained the largest financial loss. Both Dr. Schnapp and the Lee Group advance several arguments, however, as to why the NYCB Group should be disqualified from

---

[3] The Dalia Group claimed a financial loss of $357,715.40 and the Stewart Group estimated its loss at $450,971.13. As will be discussed *infra*, because the Court finds that the NYCB Group, with an estimated loss of $905,647.65, has the largest financial interest in the relief sought, and satisfies the other requirements under the PSLRA, the Court finds that the NYCB Group is the most adequate plaintiff.

[4] Dr. Schnapp initially asserted a loss of $365,129, but later changed his loss based upon a revised calculation to allegedly reflect the methods used by the other movants. (Dr. Schnapp Mem. in Further Supp. at 1 n.1.)

lead plaintiff contention. The Court will address each one in turn.

### 1. *The Validity of the NYCB Group*

Dr. Schnapp argues that the NYCB Group used an improper calculation in arriving at its estimated loss. Dr. Schnapp's argument, however, is based on his assertion that the NYCB Group is improperly comprised of two movants and that viewing each movant's loss separately, Dr. Schnapp's loss is greater than each individual movant. At this juncture, the Court need not resolve whether the approach used by the NYCB Group in estimating its financial loss is appropriate because as discussed below, the Court finds that the NYCB Group's inclusion of two distinct members is proper. Thus, under either method for calculating loss, the NYCB's loss, taken in the aggregate, is substantially greater than that of Dr. Schnapp.[5]

Dr. Schnapp argues that the NYCB Group is "nothing more than an amalgamation of unaffiliated and unrelated class members thrown together to try to artificially create the movant with the 'largest financial interest.'" (Dr. Schnapp Reply Mem. at 5.) The NYCB Group is comprised of an institutional movant, to wit, Metzler Investment, and an individual movant, to wit, Bernard Drucker.

The PSLRA states that the court "must appoint as lead plaintiff the *member or members* of the purported plaintiff class that the court determines to be most capable of

---

[5] The NYCB Group asserts its financial loss as totaling $905,647.65, based upon the "mean trading price" of its stock during the 90-day period beginning on the date on which the information correcting the misstatement or omission was disseminated to the market. 15 U.S.C. § 78u-4(e)(1). Dr. Schnapp contends that the NYCB Group erroneously performed this calculation based upon 90 *calendar* days, as opposed to 90 *trading* days, the latter of which excludes weekends and legal holidays. Thus, under Dr. Schnapp's method, the NYCB Group's loss, viewed in the aggregate, would actually be higher, at $1,010,580. (*See* Dr. Schnapp's Mem. in Further Supp. at 4.)

adequately representing the interests of class members," 15 U.S.C. § 78u-4(a)(3)(B) (emphasis added), but does not specify whether the members must be related in some fashion in order to qualify as an appropriate lead plaintiff group. As recently articulated by Judge Scheindlin:

> Courts are divided on the issue. Two cases in the Southern District of New York forcefully assert that unrelated investors may not band together for the purpose of achieving lead plaintiff status, reasoning that investors with no prior relationship will not be as effective at controlling class counsel as would a single institutional entity. Other cases, comprising the majority view, hold that unrelated investors may aggregate under certain circumstances. One court even goes so far as to argue that "a greater number of plaintiffs allows them, as a group, to wield more control over counsel." For the most part, in the absence of explicit limits the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case. Generally, a lead plaintiff group should be held to a reasonable number, so that the group does not become too unwieldy. This logic eschews a hard-and-fast rule, instead adopting a rule of reason along with the general presumption that unrelated groups with more than five members are too large to work effectively.

*In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ 2091, 2005 WL 1653933, at *2 (S.D.N.Y. July 13, 2005) (citations omitted).

Many courts have interpreted the PSLRA to favor institutional investors serving as lead plaintiff. *See id.* ("An institutional investor with substantial losses functioning as lead plaintiff is less likely to cause a flurry of otherwise pointless activity in the form of disputes within the lead plaintiff group.") (citation and internal quotation marks omitted) (collecting cases); *Dolan*, 2005 WL 883008, at *3 (stating that PSLRA was designed to encourage institutional investors which have "significant holdings in issuers [and] whose interest are more strongly aligned with the class of shareholders"). Here, given the PSLRA's preference for institutional investors, and given that the NYCB Group consists of a manageable number of

11

members, the Court finds that the two member NYCB Group is a valid group under the PSLRA. *See In re Star Gas Sec. Litig.*, No. 04 Civ. 1766, 2005 WL 818617, at *5 (D. Conn. Apr. 8, 2005) ("The majority of courts considering the issue have taken an intermediate position, allowing a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case."); *Pirelli Armstrong Tire Corp. v. LaBranche & Co.*, No. 03 Civ. 8264, 2004 WL 1179311, at *22 (S.D.N.Y. May 27, 2004) (noting that a co-lead plaintiff structure will help to ensure that adequate resources and experience are available to the prospective class in the prosecution of the class action); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00 Civ. 152, 2000 WL 486956, at *3 (D. N.J. Apr. 24, 2000) (appointing three separate movants as co-lead plaintiffs and anticipating that each party would bring a unique perspective to the litigation); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45-46 (S.D.N.Y. 1998) (naming group of three unrelated individual investors as co-lead plaintiff with an institutional investor). Thus, viewing the NYCB Group's loss in the aggregate, it has the largest financial interest.

### 2. *The NYCB Group has Standing to Sue*

Dr. Schnapp and the Lee Group contend that Metzler Investment, the institutional member of the NYCB Group, lacks standing to assert violations of the Exchange Act because it is merely an investment manager which did not purchase any NYCB stock for its own account but rather managed the investments of its clients' assets. "Generally, a client's grant of authority to an investment manager to purchase stock on his or her behalf does not also confer authority to commence suit on his or her behalf." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (citing *Smith v. Suprema Specialties*, 206 F. Supp. 2d 627,

634-35 (D. N.J. 2002)). "However, when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name." *Id.*; *see also In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *1 ("In order for an investment advisor to attain standing on behalf of investors[,] the transactions in question must have been executed as if by a single person. Moreover, the advisor must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients.") (citations omitted).

Here, Metzler Investment has proffered the signed declaration of Marlies Pauly, an authorized signatory of Metzler Investment, stating that Metzler Investment is a fund management company that controls, manages, and is attorney-in-fact for each of its funds. (Third Decl. of Peter E. Seidman, dated Dec. 15, 2004, Ex. B. ¶ 2.) The declaration further avers that:

> Metzler [Investment] is also contractually authorized to undertake and act on behalf of these funds in any legal action on their behalf, including serving as lead plaintiff in this action. These funds' respective shareholders have each entered into a contract with Metzler [Investment] explicitly authorizing Metzler [Investment] to control all investments and to commence litigation on behalf of the funds. Accordingly, Metzler [Investment] has full and complete authority and discretion to purchase and sell securities for each of these funds, and to institute legal action on their behalf, including serving as lead plaintiff in this action.

(*Id.* ¶ 4.) Metzler Investment also submits a portion of the contracts it entered into with each of the shareholders of the funds, which provides that Metzler Investment "is authorized to purchase assets with the money invested by the shareholders, to sell those assets and to otherwise invest the proceeds; it is further authorized to take all legal actions that arise from the management of

13

the assets." (*Id.* Ex. D and attachments thereto.) Based on this proffer, the Court finds that Metzler Investment has demonstrated that it has complete investment authority over its trades and is agent and attorney-in-fact with full power and authority to act in connection with its investments. Thus, the Court finds that Metzler Investment does have standing to prosecute its Exchange Act claims asserted here.

### 3. *Applying the Requirements of Rule 23*

Having established that the NYCB Group has the greatest financial loss, and is not otherwise disqualified from serving as lead plaintiff, the next question is whether the NYCB Group "otherwise meets the requirements of Rule 23(a)." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) sets forth four prerequisites to be considered in evaluating the propriety of class certification, to wit, numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Only the typicality and adequacy criterions are relevant to the selection of lead plaintiff. *See Dolan*, 2005 WL 883008, at *4; *In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *5.

Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *See, e.g.*, *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). The NYCB Group easily meets this requirement because the NYCB Group, like the other purported class members in this action, alleges that it purchased or otherwise acquired NYCB stock during the class period and was injured by false and misleading representations made by defendants in violation of both the Exchange Act *and* the Securities Act. Because the NYCB Group consists of both a movant who acquired his shares of NYCB stock through NYCB's merger with Roslyn *and* a movant who acquired its shares through the open market, all available legal theories are

14

represented. Although the Stevens Group suggests that the Court appoint two separate lead plaintiffs with separate counsel – one for the claims arising out of the Securities Act and one for the claims arising out of the Exchange Act[6]– the Court declines to do so. This argument is based on the premise that the two movants who make up the NYCB Group do not *individually* possess the greatest financial loss. As discussed previously, however, the Court has already found the NYCB Group to be a valid group which may be viewed in the aggregate. Moreover, as the parties concede, there is no precedent under which the Court is required to appoint separate lead plaintiffs for different claims, *cf. Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (stating that the PSLRA does not require district to choose lead plaintiff with standing to sue on every available cause of action), and there has been no showing that the NYCB Group, the presumptive lead plaintiff, cannot vigorously pursue both claims. The NYCB Group therefore meets the Rule 23 typicality requirement for purposes of the lead plaintiff inquiry.

The NYCB Group also meets the Rule 23 requirement that the lead plaintiff have the capacity to adequately represent the class. The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *5 (citing *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (considering adequacy in the lead plaintiff appointment context)). The NYCB Group's counsel, Milberg Weiss Bershad & Schulman LLP, has extensive experience litigating securities class actions and, therefore, has the ability to conduct the litigation effectively.

---

[6] (*See* Stevens and Feil Response at 2-4; Dr. Schnapp Reply at 6-8.)

Moreover, there is no evidence to suggest that the members of the NYCB Group have interests that are antagonistic to each other or to other members of the putative class. Finally, the NYCB Group has already displayed a willingness to vigorously pursue its claims and has enough of an interest in the outcome of the litigation to ensure that it will continue to do so. Thus, the NYCB Group is an adequate class representative.

Thus, because the NYCB Group has satisfied the three prong test of the PSLRA, to wit, the NYCB Group has submitted a timely motion requesting to be named lead plaintiff, it is the entity with the greatest financial interest in the relief sought by the class, and otherwise meets the requirements of Rule 23(a), the NYCB Group is presumptively the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To rebut this presumption, as noted previously, the other movants must offer proof that the NYCB plaintiffs "will not fairly and adequately protect the interests of the class; or [are] subject to unique defenses that render [them] incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II). They have failed to do so. Accordingly, the Court appoints the NYCB Group as lead plaintiff.

### III.    *Motions for Selection of Lead Counsel*

The NYCB Group further moves to designate Milberg Weiss Bershad & Schulman LLP as lead counsel. The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. § 78u-4(a)(3)(B)(v). Resumes submitted by the firm indicate that it has successfully prosecuted numerous securities fraud class actions and is otherwise well qualified and free of conflicts. Accordingly, the Court appoints Milberg Weiss Bershad & Schulman LLP as lead counsel.

# CONCLUSION

For the foregoing reasons, the motion by the NYCB Group is granted in its entirety. The Court appoints the NYCB Group as lead plaintiff and Milberg Weiss Bershad & Schulman LLP as lead counsel. The other applicants' motions are granted to the extent they seek consolidation but are otherwise denied. The NYCB Group shall serve and file a consolidated complaint within thirty (30) days of this Order.

The actions are hereby consolidated under the caption "In re New York Community Bancorp, Inc. Securities Litigation." All relevant documents and submissions shall be maintained as one file under case number 04 CV 4165. The Clerk of the Court is hereby directed to close the other ten actions.

**SO ORDERED.**

Central Islip, N.Y.
August 9, 2005

/s
Denis R. Hurley,
United States District Judge